## J. M. DRAKE v. THE STATE.

*No. 7000.    Decided November 1.    Rehearing refused December 17.*

**1. Practice—Statement of Facts.**—Article 1379 of the Revised Statutes provides that the court may, by an order entered upon the record during the term, authorize the statement of facts to be made up, signed, and filed in vacation, at any time not exceeding ten days after the adjournment of the term. The said article must be construed as an exception to the rule prescribed in articles 1377 and 1378 requiring the statement of facts to be certified and filed during the term.

**2. Same.**—It is objected to the statement of facts in the record that it was prepared by the trial judge without the aid of the agreed statement submitted to him by the defendant. The judge's certificate recites that he had before him and examined the agreed

statement of facts while preparing the statement certified by him.    It is not otherwise made to appear that the statement of facts in the record is in any respect materially different from the agreed statement, or that it is other than a full, fair, and true statement of the facts.    *Held*, that the defendant's objection was not well taken.

3.  **Same—Declarations as Res Gestæ.**—On a trial for murder a State's witness was permitted to testify that about two minutes after the deceased was shot by the defendant, he, witness, asked deceased who shot him, and that deceased answered, in substance, that the defendant shot him; that he, deceased, was about finishing the removal of his furniture from defendant's house, and was sweeping the house when defendant asked him for his rent; that he, deceased, told defendant that if he, defendant, had acted the gentleman toward him he, deceased, would have owed him some rent, but that under the circumstances he felt that he did not owe him any rent, and that thereupon defendant shot him, deceased, and shot him for nothing.    *Held*, that the testimony was properly admitted as *res gestæ*.

4.  **Same—Impeaching Testimony.**—The rule obtains that "when a witness is cross-examined on a matter collateral to the issue his answer can not be subsequently contradicted by the party putting the question."    Nor is it proper to allow a witness to be cross-examined as to any matter which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence.    The test of whether a fact inquired of in cross-examination is collateral is this, Would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea?

5.  **Same — Case Stated.**—Over defendant's objection the State was permitted, on cross-examination, to ask Jimmie Drake, the defendant's son and witness, if on the evening of and after the shooting, and at a certain place and in the hearing and presence of four certain parties, he did not say that he knew his father was going to kill the deceased before he left home on that morning.    The witness having denied making the statement, the four parties named in the question were introduced by the State and, over the defendant's objection, testified that the witness Jimmie Drake did make the said statement.    *Held*, that under the rule above announced the defendant's objection should have been sustained.    The matter involved in the cross-examination of the witness, and about which he was contradicted, was not matter admissible as criminative evidence; and, as tending to prove only the opinion or conclusion of the impugned witness, and not a fact within his knowledge, it was matter collateral and irrelevant to the issue.    Note the opinion on the motion for rehearing adhering to this determination of the question, and see the opinions on the whole subject.

6.  **Malice—Charge of the Court.—** The proof in this case showed a recent prior difficulty between the defendant and the deceased.    The defense assailed the charge of the court upon the ground that it omitted to instruct the jury that the law does not presume malice from an antecedent difficulty, but that it devolved upon the State to prove that the killing was upon such antecedent malice, and not upon fresh provocation arising at the time; and requested a special instruction submitting the principle of law as thus stated.    The rules applicable to this question are: 1. Where fresh provocation intervenes between the preconceived malice and the death, it will not be presumed that the killing was upon the antecedent malice.    2. Though it (the preconceived malice) will not be presumed, it may be proved by the circumstances and facts of the case to have actuated the slayer, notwithstanding the fresh provocation.    These rules, however, relate merely to the *effect* of evidence, and to give them in charge would be error as instructing upon the weight of evidence.    The usual and proper practice in such cases is for the trial court to explain to the jury the law of murder of the two degrees; the meaning of express and implied malice; that express malice must be proved in order to convict of murder in the first degree, and that if from the evidence there exists in the minds of the jury reasonable doubt of the defendant's guilt of murder in the first degree they must acquit him of that grade of homicide.    Such instruction is equivalent to telling the jury that they can not convict of murder in the first degree upon any pre-

sumption of malice, but that they can only convict of that degree upon proof beyond a reasonable doubt that the killing was upon that kind of malice. The omission in the charge complained of and the refusal of the requested instruction did not constitute error.

7. Same — Manslaughter — Self-Defense. — See the statement of the case for charges of the court upon the issues of manslaughter and self-defense *held*, though not so full as they should have been, correct to the extent they go, and in the absence of additional instructions requested and refused, to be sufficient.

APPEAL from the District Court of Hill, on change of venue from McLennan. Tried below before Hon. J. M. Hall.

This is the appellant's second appeal from conviction in the first degree for the murder of S. L. Guinn, the death penalty, as on the former conviction, being assessed.

The evidence adduced on the former trial will be found summarized in the report beginning on page 293 of the 25th volume of these Reports. All of the witnesses who testified on the former trial did not testify on this, and a few of those who testified on this did not testify on the former trial. Practically, however, the evidence on the two trials was the same, and will not be repeated herein, inasmuch as so much thereof as bears upon the questions involved in this appeal is stated in the opinion.

The charges of the court on manslaughter and self-defense, referred to in the last head note, read respectively as follows:

"The court further instructs you that if you believe from the evidence beyond a reasonable doubt that from all the circumstances surrounding the defendant at the time he met the deceased when the homicide was committed, and from all the matters that occurred between them, that the same was sufficient to create in the mind of defendant such sudden passion as to render his mind incapable of cool reflection, and that the same did then and there render his mind incapable of cool reflection, and that the defendant, then acting upon the immediate influence of such sudden passion, if any, with a pistol shot and killed Samuel L. Guinn at the time and place charged in the indictment, then you will find the defendant guilty of manslaughter, and you will assess his punishment at confinement in the penitentiary for any time not less than two and not more than five years, and so say by your verdict.

"The court instructs you that if from the acts of the deceased, Samuel L. Guinn, or from his words coupled with his acts, if any, the defendant had reason to believe and did believe that he was in immediate danger of losing his life or of suffering serious bodily injury at the hands of said Guinn, then defendant would have the right to defend himself from such danger or apparent danger, and if he shot the deceased as a means of defense, then he would be justified in law, for he was not bound to retreat, but could stand his ground and defend himself from such danger or apparent danger, if any, as it then appeared to him. And if you believe

from the evidence that he shot Guinn under such reasonable apprehension of danger as above explained, then you will find him not guilty, and so say by your verdict.'"

*Clark, Dyer & Bolinger*, and *W. H. Lessing*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, and *J. B. Scarborough* and *B. D. Tarlton*, for the State.

WILLSON, JUDGE.—This conviction is for murder in the first degree, the penalty assessed being death. It is a second conviction, the former conviction having been on appeal to this court set aside and a new trial awarded because of errors committed on the trial. 25 Texas Ct. App., 293. None of the questions presented and determined on the former appeal are involved on this appeal.

Preliminary to other questions demanding our consideration and decision is a question arising subsequent to the trial relating to the preparation and authentication of the statement of facts. Briefly stated, the facts bearing upon this question are as follows: 1. By an order of court entered upon the minutes, ten days time after the adjournment of the court for the term was allowed the parties within which to prepare and file a statement of facts. 2. Within said time counsel for the State and the defendant prepared and agreed upon a statement of facts, and having signed the same presented it to the trial judge. 3. The trial judge refused to approve said agreed statement, and instead thereof prepared, certified, and had filed the statement of facts which appears in the record, the same being filed within the time allowed by the order of the court.

Counsel for defendant contend that the trial judge had no authority to prepare, certify, and file a statement of facts after the adjournment of the court for the term. Also that the judge's certificate to said statement shows that he prepared said statement without the aid of defendant's statement, and without defendant having had the opportunity of furnishing the judge with a statement. They claim that defendant, without fault on his part or on the part of his counsel, has been deprived of a legal statement of facts, and that for this cause the judgment of conviction should be set aside.

With respect to the first objection that the statement of facts to be legal must have been made and filed "during the term," as provided in articles 1377 and 1378 of the Revised Statutes, we are of the opinion that said articles must be construed in connection with article 1379, which article was added in revising the statutes. Where the order provided for by said last cited article has been made and entered of record the statement of facts may be made up, certified, and filed within the time allowed by the order in vacation, and said article must be construed as an exception to

the rule prescribed in articles 1377 and 1378 requiring the statement of facts to be certified and filed "during the term." The case of Withee v. May, 8 Texas, 160, cited by counsel for defendant, is not applicable because decided prior to the enactment of article 1379, when the statute in all cases required the statement of facts to be made, certified, and filed "during the term." The same remarks are applicable to the case of Carter v. The State, 5 Texas Courts of Appeals, 458. The other cases cited by counsel for defendant, Stephens v. The State, 10 Texas Court of Appeals, 120, and King v. Russell, 40 Texas, 124, are not applicable to the question under consideration.

As to the objection that the judge prepared the statement of facts without the aid of a statement prepared for the defendant, it appears from the certificate of the judge that he had before him and examined the agreed statement of facts while preparing the statement certified to by him. It has not been made to appear that the statement of facts in the record is in any respect materially different from the agreed statement. While the agreed statement may not be a statement furnished the judge by the defendant within the letter of the statute, it certainly was a statement sanctioned and admitted to be true by the defendant, and in the absence of any showing that the defendant has been deprived of a full, fair, and true statement of the facts, we feel justified in holding, as we do, that in the preparation, authentication, and filing of the statement of facts contained in the record no reversible error was committed.

On the trial Cunningham, a witness for the State, testified, over the objections of the defendant, that about two minutes after the deceased had been shot by defendant witness asked deceased who had shot him, and deceased answered, in substance, that defendant had shot him; that deceased was about finishing the removal of his furniture from defendant's house, and was sweeping the house, when defendant asked him for his rent; that deceased told defendant that if he, defendant, had acted the gentleman toward him he, deceased, would have owed him some rent, but under the circumstances he felt that he did not owe him any rent, and that thereupon defendant shot him, deceased, and shot him for nothing. We are of the opinion that the above recited statements of the deceased, detailed by the witness Cunningham, were properly admitted in evidence against the defendant as *res gestæ*. Warren v. The State, 9 Texas Ct. App., 619; Washington v. The State, 19 Texas Ct. App., 521; Irby v. The State, 25 Texas Ct. App., 203; Testard v. The State, 26 Texas Ct. App., 260.

James Drake, Jr., a witness who testified in behalf of the defendant, was asked upon cross-examination the following question: "On the evening or night of August 27, 1887, the day Guinn was shot by your father, at or near the store of Charles Rast, on Austin Street in the city of Waco, Texas, and in the presence of Hugo Robinson, Street Bacon, Bob Flem-

ing and Todd Zeigler, did you not say that you knew your father was going to kill Guinn before you left your father's house that morning?" The witness answered that he had not made any such statement. Thereafter the State proved by Hugo Robinson, Street Bacon, Bob Fleming, and Todd Zeigler that the witness James Drake, Jr., did make the statement set forth in the question, in their presence at the place and time specified in said question. Defendant objected to the question, and objected to the testimony of the witnesses Robinson, Bacon, Fleming, and Zeigler. His objections to the question, briefly stated, were that if the witness Drake had made such statement it was a mere opinion, was not admissible against the defendant as criminative evidence, and that the question was not permissible for the purpose of laying a predicate to impeach the witness Drake, because it related to a matter collateral to the main issue and called for a statement which, if made, was a mere opinion of the witness. The objection made to the impeaching testimony was that it related to a matter collateral to the main issue; a matter of opinion and not of fact.

It can not be questioned that the statement which the witnesses Robinson, Bacon, Fleming, and Zeigler testified was made by the witness Drake was inadmissible as criminative evidence against the defendant. It was not introduced or admitted as criminative evidence, but for the sole purpose of impeaching the credibility of the witness Drake, Jr., and the jury was plainly and emphatically instructed in the charge of the court as to the purpose for which said testimony was admitted, and that it could not be considered for any other purpose. Drake v. The State, 25 Texas Ct. App., 293.

Was it competent to impeach the witness Drake, Jr., in the manner permitted? This same testimony was before this court on the former appeal, but it does not appear from the report of the case that it was objected to on the trial. We presume that the objections now presented to it were not presented on the former appeal, as we find no reference in the opinion to any objection. Our former opinion, therefore, does not answer the question above propounded, and we are now called upon to consider and answer it.

"When a witness is cross-examined on a matter collateral to the issue his answer can not be subsequently contradicted by the party putting the question." Nor is it proper to allow a witness to be cross-examined as to any matter which is collateral and irrelevant to the issue merely for the purpose of contradicting him by other evidence. Whart. Crim. Ev., 9 ed., sec. 484; Rainey v. The State, 20 Texas Ct. App., 473; Hart v. The State, 15 Texas Ct. App., 202; Johnson v. The State, 22 Texas Ct. App., 206; Brite v. The State, 10 Texas Ct. App., 368; Stevens v. The State, 7 Texas Ct. App., 39.

What is collateral and irrelevant matter within the rules above stated?

In his work on Criminal Evidence, 9th edition, section 484, Mr. Wharton, quoting from the opinion in Hildebrum v. Curran, 65 Pennsylvania State, 63, says: "The test of whether a fact inquired of in cross-examination is collateral is this, Would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea?" This test has been quoted and adopted by this court in Hart v. The State, 15 Texas Court of Appeals, 202, and in Johnson v. The State, 22 Texas Court of Appeals, 206. Having this plain and approved test, it only remains for us to apply it correctly to the impeachment of the witness Drake, Jr., as permitted in this case, and thereby ascertain whether or not that impeachment was legal.

What was the fact inquired about? A statement made by the witness Drake, Jr., that he knew his father (the defendant) was going to kill Guinn (the deceased) before he, the witness, left home that morning—the morning of the day of the homicide. Would the State have been entitled to prove as a part of its case by the witness Drake, Jr., or by other evidence, that said witness knew on the morning of and prior to the homicide that his father intended to kill the deceased? Could such *knowledge* of the witness be considered a *fact*, and a *relevant, material* fact? Suppose the witness Drake, Jr., while upon the stand had been asked by either party the question, "What was defendant's *intention* toward the deceased before you left home on the morning of and prior to the homicide?" Would such a question, if objected to upon the ground that it called for the opinion or conclusion of the witness and not for facts, have been allowed by the court? We do not think the question would have been legitimate and permissible. How could the witness know as a fact the *intention* of the defendant? That a certain intent existed is a *conclusion* deduced from *facts;* from the words and conduct of the individual to whom the intent is imputed. It is for the jury, and not the witness, to deduce the *conclusion*, and that they may do this the witness must state the *facts* from which the conclusion as to the intent is sought to be deduced. Upon the *facts* the conclusion deduced by a jury as to intent might be the very opposite of that reached by the witness.

Suppose counsel for the State on cross-examination had asked the witness Drake, Jr., the question, "Did you *know* on the morning of and prior to the homicide that the defendant was going to kill the deceased?" Would the question have been legitimate? We think it would not have been. It was calculated to elicit from the witness his conclusion merely. His conclusion as to the *intention* of the defendant. How could the witness *know* that defendant was going to kill the deceased? He could not *know* it. He could merely *conclude* that it was the defendant's intention to do the act, and this conclusion he would deduce from *facts* within his knowledge. An affirmative answer to the question would not be evidence of a *fact*, but merely the opinion of the witness as to the intention of the

defendant. *Knowledge* of what the defendant was going to do could be nothing more than the witness's opinion or conclusion deduced from the words and acts of the defendant. Such *knowledge* is not a *fact*. If the question had been, "Did the defendant on the morning of and prior to the homicide tell you that he was going to kill the deceased?" it would have been legitimate. It would have been an inquiry for a *fact*, a fact relevant and material to the main issue; a fact which the State would have been entitled to prove as a part of its case. If in laying the predicate to impeach the witness Drake, Jr., he had been asked, "Did you not state in the presence of Hugo Robinson, Street Bacon, Bob Fleming, and Todd Ziegler, on the evening or night of August 27, 1887, the day that Guinn was shot by your father, and at or near the store of Chas. Rast, in Waco, that your father told you on that morning before the homicide that he was going to kill Guinn," the question would have been proper; would have been as to a fact relevant and material to the main issue, a fact with respect to which the witness could be impeached by proving that he did make such statement. And so of any other fact of like character.

As we have before stated, we regard the matter about which the witness Drake, Jr., was contradicted as a matter of opinion merely—a conclusion of the witness and not a fact. Opinions of witnesses as a general rule are not admissible in evidence. Witnesses must be confined to a statement of the facts within their knowledge, from which facts the jury are to deduce their own conclusions. Willson's Crim. Stat., sec. 2502. There are well established exceptions to this general rule. One of these exceptions is where the facts from which the opinion proceeds as an effect are of a character that they can not be so detailed and presented to the minds of a jury as to impart to them the knowledge which the witness actually possesses. Whenever a condition of things is such that it can not be reproduced and made palpable in the concrete to the jury, or when language is not adequate to such realization, then the witness may describe it by its effect upon his mind, even though such effect be opinion. Powers v. The State, 23 Texas Ct. App., 42. But the opinion or conclusion of the witness Drake, Jr., as to the intention and purpose of the defendant to kill the deceased can not be brought within this or any other exception to the general rule. He could have detailed and presented to the minds of the jury the facts upon which his knowledge, or what is the same thing, his opinion as to defendant's intention and purpose, was predicated. He could have stated the words or acts of the defendant tending to develop such intent and purpose. Hence we say it was not competent to call for or prove a statement made by the witness, which statement was nothing more than his opinion or conclusion. · We must and do hold, therefore, that error was committed in allowing the witness Drake, Jr., to be impeached in the manner stated and shown by the defendant's bill of exception. We regard this error as material and reversible, notwithstanding

the instruction of the court to the jury limiting their consideration of the impeaching testimony to the purpose for which it was admitted. It was proved by the positive testimony of four witnesses that the witness Drake, Jr., the son of the defendant, a few hours after the homicide stated that he knew that his father was going to kill the deceased before he did kill him. While it is true that this statement was not criminating evidence against the defendant, and the jury were so instructed by the court, its probable effect upon the minds of the jury was to not only discredit the testimony of the witness Drake, Jr., whose testimony was very material to the defendant, but also to prejudice and influence the minds of the jury upon the main issue. It is not probable that the jury, in the consideration of the main issue, did or could divest their minds of the statement proved by four witnesses to have been made by the witness Drake, Jr. If the jury believed that he made such statement would it be natural for them to obey the instruction of the court and restrict their consideration of it to the impeachment of the witness? They might endeavor to do so, and believe they were doing so, and still be involuntarily and unconsciously influenced thereby.

Several exceptions were made and reserved by bill of exception to the charge of the court. Among them was the following: "Because the facts in evidence show that a previous difficulty occurred between the deceased and the defendant, and it is the duty of the court to instruct the jury that the law does not presume malice from such antecedent difficulty, but it devolves upon the State to prove that the killing was upon such antecedent malice and not upon fresh provocation arising at the time." Defendant also requested the following special charge, which the court refused to give the jury, because in the opinion of the court it was upon the weight of evidence. "The jury are instructed that if they believe from the evidence that a previous difficulty occurred between the deceased and the defendant anterior to the fatal encounter, then the jury are instructed that it will not be presumed that the killing was upon the antecedent malice, and it devolves upon the State to prove that the defendant acted upon such antecedent malice and not upon fresh provocation arising at the time of the killing."

In McCoy v. The State, 25 Texas, 33, it is said: "There may be a case where there are facts tending to establish different conclusions as to the kind of malice; some to establish that the killing was upon express and others that it was upon implied malice. In such case the only rules as to the effect of the evidence which it is now necessary to notice are:

"1. That where fresh provocation intervenes between the preconceived malice and the death it will not be presumed that the killing was upon the antecedent malice.

"2. That though it will not be presumed, it may be proved to have actu-

ated the person in the killing by the circumstances and facts in the case, notwithstanding the fresh provocation."

It will be observed that these rules relate to the *effect* of evidence. To give them directly in charge to the jury would be instructing upon the effect and weight of the evidence, and therefore improper.

In Murray v. The State, 1 Texas Court of Appeals, 417, the trial court gave an instruction as to "cooling time," there being evidence of a quarrel having occurred between the parties on the day of and prior to the killing. It was held that the instruction as framed was erroneous, and in passing upon it this court remarked: "If the court felt called upon to charge the jury in reference to any antecedent difficulty between the parties, then the proper instruction should have assimilated the rule laid down in McCoy v. The State."

It was not held in Murray's case that such a charge was required, nor that it would have been proper to have given in charge directly the rules announced in McCoy's case. The intimation in the opinion is to the contrary. We know of no case in which such a charge has been given to the jury or in which it was held to be necessary or proper. The usual practice is to explain to the jury the law of murder in the two degrees; the meaning of express and implied malice; that express malice must be proved in order to convict of murder in the first degree, and that if from the evidence there exists in the minds of the jury a reasonable doubt of the defendant's guilt of murder in the first degree, they must acquit him of that grade of homicide. This is equivalent to instructing the jury that they can not convict of murder in the first degree upon any presumption of malice, but that they can only convict of that degree upon proof beyond a reasonable doubt that the killing was upon that kind of malice. In this case these usual instructions were given, and in our opinion they contain the rules substantially laid down in the McCoy case, *supra.* We do not think the charge is subject to the exception made to it in this particular, and the court did not err in refusing the special instruction requested.

Objections are also made to the charge on manslaughter and self-defense. No additional instructions upon those issues were requested by the defendant. While the charges upon those issues are not as full, perhaps, as they should have been, they are correct as far as they go, and in the absence of additional instructions requested and refused, we think the charge sufficient and that the defendant has no ground of complaint.

We have discussed and determined such questions as might occur on another trial.

Because of the error of admitting the impeaching testimony, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.

ON MOTION FOR REHEARING.

WILLSON, JUDGE.—In criminal as well as in civil actions the rules governing motions as prescribed by the Supreme Court apply to this court. Rule 76 for Ct. App. Motions for rehearing are made and conducted in accordance with the statute, which describes fully the manner of this proceeding. Rule 67 for Sup. Ct.; Rev. Stats., arts. 1051, 1055. We find no constitutional or statutory provision or rule of court denying to the State a rehearing in this court. Articles 776 and 783 of the Code of Criminal Procedure relate to new trials in the trial court, and have no application, directly or indirectly, to the proceeding for rehearing in this court. Article 876 of said code does not even impliedly prohibit a rehearing to the State. It simply declares the effect in the lower court of a reversal of the conviction and remanding of the cause by this court. In the absence of any constitutional or statutory denial of a rehearing to the State or of any express recognition of such proceeding in behalf of the State it would, we think, be authorized under the well settled rule that until the adjournment of a term a court has full control over its judgments, and can set aside or reform them. Grubbs v. Blum, 62 Texas, 426; Hooker v. Williamson, 60 Texas, 524; 1 Texas Ct. App. C. C., secs. 1041, 1314; 2 Texas Ct. App. C. C., secs. 313–572. It has been the uniform practice of this court to entertain motions for rehearing in behalf of the State, and in many instances such motions have been granted, judgments of reversals set aside, and the judgments of conviction affirmed. No reason or authority has been presented to us demanding a change in the present practice, which is sanctioned not only by long observance, but is supported by statute and by the rules prescribed by our Supreme Court. We therefore overrule the defendant's motion to dismiss the State's motion for a rehearing.

Upon this motion for a rehearing we have listened with profound interest to the able arguments of counsel, and in the light of those arguments we have again considered the question upon which we reversed the conviction; that is, the admission of the testimony impeaching the credibility of the witness Jimmie Drake. We appreciated the importance of this question when it was first presented—its importance generally, as well as in this case, to the State as well as to the defendant. We have given to it much thought and such investigation as circumstances have permitted. If we have failed to reach a correct solution of it, it is not because we have not bestowed upon it our best thought, aided by the lucid reasoning and careful research of able counsel. We fully admit that the question is one of difficulty, and that the conclusion reached by us upon it is opposed by arguments not only worthy of consideration, but not easily combatted.

We here state that our conclusions as expressed in our original opinion

remain unchanged.    We did not reach those conclusions hastily, but after mature deliberation, and a settled conviction that they accord with the law, and that a contrary holding would violate the well established rules of evidence relating to this character of impeaching testimony.    Those conclusions have not been shaken by subsequent reflection enlightened by the ingenious and forcible reasoning of counsel who have so earnestly and courteously attacked them.

We will not reiterate our conclusions or the reasons therefor contained in our first opinion.    We will only express our views in answer to such of the positions stated by counsel for the motion as have not been heretofore discussed by us.

Counsel for the motion suggest that we have not properly apprehended the record in relation to the testimony of the witness Jimmie Drake.    In this supposition counsel are mistaken.    We understood the record precisely as counsel have recited and explained it in presenting this motion. The witness Jimmie Drake testified that he went with the defendant to the house where the homicide occurred, was with the defendant at the time of the homicide, and that the defendant and himself went to the house for the purpose of cleaning it and preparing it for occupancy.    If we have erred in our determination of the question it is not because we misunderstood the record in this particular.

It is stated by counsel for the motion that our opinion can only be sustained upon one or the other of the following propositions: "1. That the fact inquired about in cross-examination is upon a collateral issue.    2. That the State's question and the witness's answer involved the opinion of the witness."    The first proposition is incorrectly stated.    It should be stated thus: "That the fact inquired about is collateral to the issue." There is essential difference between a fact *collateral to the issue* and a *collateral issue*.    Our position is that the *fact* inquired about—that is the statement made by the witness Jimmie Drake that he knew the defendant was going to kill the deceased—is *collateral* to the issue, not that it is a fact bearing upon a *collateral issue*.    A statement inconsistent with a witness's testimony on the trial to be made the basis of impeachment must be a statement *material* to the issue, and it must be of a *fact* which the cross-examining party would be entitled to prove as a part of his case. Our position is that it was not material to the issue in this case that Jimmie Drake made the statement imputed to him.    That statement could not be made evidence against the defendant.    It did not involve *facts* in evidence but merely the conclusion of the witness.    It was not the statement of a *fact* but of a conclusion—a mere opinion or belief of the witness. It was therefore a statement *collateral* to the issue as we understand the authorities upon this subject.    In addition to the citations of authorities in our former opinion bearing upon this question, we refer to Wharton's

Criminal Evidence, section 482; 1 Wharton on Evidence, section 551, and 1 Greenleaf's Evidence, section 449.

As to the second proposition, we held and still hold that the statement inquired about involved the *opinion* merely of the witness. A statement of opinion merely can not be used to impeach a witness, except when opinion is an issue or where the opinion stated goes to show bias of the witness. Whart. Crim. Ev., sec. 482; 1 Greenl. Ev., sec. 449; Holmes v. Barber, 18 Barb., 420. In this instance opinion was not an issue, and the statement imputed to the witness did not tend to show his bias. It is strongly argued, however, by counsel for the motion that the imputed statement was as to a *fact*, and was not merely an *opinion* or *conclusion* of the witness. We have given our views upon this proposition in our first opinion. Knowledge of another's intent or purpose can only be an inference or conclusion from facts; it is not itself a fact. Knowledge of another's intent or purpose may be established by proof of facts showing such intent or purpose, and showing that such facts were known to the person to whom the knowledge is to be imputed. When such proof is made knowledge of the intent and purpose of the other is an established fact, but without such proof a statement of the intent and purpose of another can not be regarded as anything more than an opinion, a belief, a conclusion of the party making such statement.

It is argued by counsel for the motion that we have erred in presuming that the illegal testimony admitted for the purpose of impeaching the witness Jimmie Drake influenced the jury prejudicially to the defendant. It is immaterial if we have so erred. A capital conviction will be set aside if illegal evidence has been admitted over the defendant's objection and he has duly reserved exceptions, and the court will not inquire whether there is sufficient legal evidence to sustain the conviction or whether the verdict was influenced by the illegal evidence. Hester v. The State, 15 Texas Ct. App., 567; Preston v. The State, 4 Texas Ct. App., 200; Haynie v. The State, 2 Texas Ct. App., 168; Somerville v. The State, 6 Texas Ct. App., 433; McWilliams v. The State, 44 Texas, 116.

In oral argument counsel for the motion suggested that this court had on the former appeal of this case virtually sanctioned the admission of said impeaching testimony. We have before us and have examined the record on the former appeal, and no question was made on the former appeal to the competency of said evidence. It was not objected to when offered in the trial court, or if it was, no exception was reserved to its admission. Its admission is not claimed as error on the former appeal in any manner. Its admissibility was therefore not a question before this court on that appeal, and hence was not considered or passed upon in the decision of the case.

In conclusion, we will say that if we are wrong in our views and determination of this case, the wrong is not an irreparable one. If, however,

we were to hold to the contrary, and erroneously, the wrong would be irreparable to the defendant, and the life of a human being would be taken without a fair and impartial trial in accordance with law. It is a consolation, therefore, to us to know that if we err, it is an error which will not deprive the defendant of his life.

The motion for a rehearing is overruled.

*Motion overruled.*

Judges all present and concurring.