STATE *v.* DAVIDSON.

1. The state, on a trial for murder, having asked defendant's witness on cross-examination whether he had not stated that, after an investigation he was convinced that defendant killed deceased, cannot rebut his negative answer.

2. The erroneous admission of testimony that deceased's brother-in-law, who had come 120 miles to investigate the homicide, and made a careful investigation, said that he was convinced that defendant killed deceased, is ground for reversal.

(Opinion Filed, April 6, 1897.)

Error to circuit court, Butte county. Hon. A. J. PLOW-MAN, Judge.

William·C. Davidson was convicted of murder, and brings error. Reversed.

The facts are stated in the opinion.

*Rice & Polley* and *Joseph B. Moore,* for plaintiff in error.

A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issues, merely for the purpose of impeaching him by other evidence; and mere opinions which the witness may have formerly expressed are inadmissible. 1 Greenl. Evi., § 449; 1 Whart. Crim. Evi. §§ 457-459; Com'r v. Mooney, 110 Mass. 99. Where the prosecution cross·examines upon a collateral issue, it is bound by the answer. Davis v. State, 20 S. W. 923; People v. Stackhouse, 49 Mich. 76; Drake v. State, 15 S. W. 725; State v. Wilson, 4 S. D. 535, 57 N. W. 338.

*Coe I. Crawford,* Attorney General, for defendant in error.

It is always material on cross-examination to ask questions of a witness "to test his accuracy or credibility, or to impair his credit by compromising his character, but the extent to which such examination shall be allowed is in the discretion of the court." 3 Rice on Evi., pp. 360, 361; Whart. Crim. Evi. § 465; Clark v. Reese, 35 Cal. 89; State v. Wentworth, 65 Me. 234, 20 Am. Rep. 688; Roddy v. Finnegan, 43 Md. 490; State v. Bilanski, 3 Minn. 246; Newcomer v. State, 37 Miss. 383; Fries v. Brugley (N. J. L.) 21 Am. Dec. 52; Pickard v. Collins 33 Barb. 444; Sothard v. Rexford, 6 Cow. 255.

CORSON, P. J. The defendant was indicted, tried and convicted of the crime of·murder, and, under the verdict of the jury, he was sentenced to state prison for life. The alleged murder was committed in the unorganized county of Wagner, adjoining Butte county, in which latter county the case was tried. The evidence against the defendant is what is known as "circumstantial evidence", there being no direct proof that the

defendant committed the murder. Giles, the deceased, was engaged in the business of ranching, and had a herd of cattle. He lived on his ranch with his wife and two children. Defendant Davidson was what is known as a "cow-boy," or herder of cattle, and had, prior to the death of Giles, been in the employ of various ranchers in that vicinity. The theory of the prosecution was that the defendant had been, for some time prior to the killing, criminally intimate with the wife of the deceased, and that deceased had been advised of this criminal intimacy, and trouble for the defendant was likely to follow. To get the deceased out of the way, and secure the herd of cattle for himself and Mrs. Giles, it was claimed, the defendant had a sufficient motive for committing the murder. A few days previous to his death, the deceased went to Dickinson, on the Missouri river, about 120 miles from his home, and on his return, when a few miles from home, he was shot and killed. The defendant and Mrs. Giles, widow of deceased, were jointly indicted for the murder of Giles, but, on application, the defendant was granted a separate trial. The prosecution, to establish a motive for the killing on the part of the defendant, proved, by a number of witnesses, facts tending to show the criminal intimacy between the defendant and Mrs. Giles. The defense, to disprove this theory, and thus do away with the alleged motive, introduced witnesses to disprove the alleged intimacy between the defendant and Mrs. Giles. Among these witnesses was one Archie Hodgkins, a brother of Mrs. Giles, who lived at Dickinson, on the Missouri river, before mentioned. Hearing of the murder of his brother-in-law Giles, Hodgkins, with Charles Anderson and one Benson, came down to the Giles or O. G. ranch, arriving there about a week after the death of Giles, and remaining there two or three days. This statement will be sufficient to an understanding of the error relied upon for a reversal of this case.

Hodgkins, when on the stand for the defense, on his cross-examination by the state, was asked this question: "Did you

not state at the E. O. ranch, to Mr. Anderson, that, since you had investigated the matter down there, you were convinced that Davidson had killed Giles, or words to that effect, the night of the 16th or 17th of May, 1893?" The question was objected to and the objection overruled, and an exception taken. To the question the witness answered "No, sir." When the prosecution introduced its rebuttal evidence, it called Charles H. Anderson, and propounded to him the following question, reading to the witness the former question propounded to Archie Hodgkins: "Did you have such a conversation with him?" The question was objected to as not proper rebuttal testimony, but the objection was overruled, and the witness answered, "Yes, sir." The question is somewhat peculiarly framed; but that it was fully understood by the jury is made clear by the fact that the court, of its own motion, in the presence of the jury, immediately asked the witness if "Hodgkins told him that," and the witness replied that he did. The counsel for the defendant now contend that the question propounded to the witness Hodgkins was inadmissible, and should have been excluded; but, in any event, the prosecution was concluded by the answer of the witness, as the question was collateral to the issue, and went to the expression of an opinion or conclusion of the witness, and was not the statement of any fact in the case, and hence should have been excluded. The counsel for the prosecution contend that the question was not collateral to the issue, and was proper to show the bias and feelings of the witness. We are of the opinion that the question should have been excluded under the objections of the defendant when propounded to Archie Hodgkins, as to his opinion or conclusion as to the guilt or innocence of the defendant was clearly immaterial and collateral to any issue in the case. But, in any event, the prosecution, was concluded by his answer, and the overruling of the objection to the question propounded to Anderson was clearly error.

The rule may be said to be well settled that the statement of the witness upon which he can be impeached must not only

relate to the issue, but it must be a matter of fact, and not merely a former opinion of the witness in relation to the matter in issue, inconsistent with a different opinion, which might seem to be warranted by his testimony, or which the facts he testified to tend to establish. Elton v. Larkins, 5 Car. & P. 385; Holmes v. Anderson, 18 Barb. 420; People v. Webb (Cal.) 11 Pac. 509; Davis v. State (Tex. Cr. App.) 20 S. W. 923; People v. Stackhouse, 49 Mich. 76, 13 N. W. 364; Drake v. State (Tex. App.) 15 S. W. 725; Hildeburn v. Curran, 65 Pa. St. 59; Com. v. Mooney, 110 Mass. 99; 1 Greenl. Ev. § 449; Whart. Crim. Ev. 457-459. The principle is well illustrated in the early English case of Elton v. Larkins, *supra.* In that case the insurance broker who procured the insurance for the plaintiff testified upon the trial, as a witness for the defendant, that he omitted to make certain disclosures which it was claimed were material, and the omission of which would avoid the policy; and on the cross-examination he denied that he had said, some time after the policy was effected, that "the underwriters had not a leg to stand on in their defense." A witness was called to prove that he did make such a statement, but the court excluded the evidence. The ruling of the court was sustained, upon the ground that the statement did not relate to the matter in issue, and was not as to a matter of fact, but only as to an opinion of the witness. In Hildeburn v. Curran, 65 Pa. St. *supra*, the supreme court of Pennsylvania, speaking by Mr. Justice SHARSWOOD, says that "the rule is well settled that if a witness is cross-examined as to a fact purely collateral and irrelevant to the issue, and answers it without objection, he cannot be contradicted." And that court in the same opinion says: "The test of whether a fact inquired of on cross-examination is collateral is, would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea?"

This whole subject has been so ably discussed in the recent homicide case of Drake v. State, *supra*, by the criminal court of appeals of Texas, that we feel warranted in making quite

full extracts from the opinion. That court says: "James Drake, Jr., a witness, who testified in behalf of the defendant, was asked upon cross-examination the following question: 'On the evening or night of August 27, 1887, the day Guinn was shot by your father, at or near the store of Chas. Rast, on Austin street, in the city of Waco, Texas, and in the presence of Hugo Robinson, Street Bacon, Bob Fleming and Todd Zeigler, did you not say that you knew your father was going to kill Guinn before you left your father's house that morning?' The witness answered that he had not made any such statement. Thereafter the state proved by Hugo Robinson, Street Bacon, Bob Fleming and Todd Zeigler that the witness James Drake, Jr., did make the statement set forth in the question, in their presence, at the place and time specified in said question. Defendant objected to the question, and objected to the testimony of the witnesses Robinson, Bacon, Fleming and Zeigler. * * * The objection made to the impeaching testimony was that it related to a matter collateral to the main issue—a matter of opinion and not of fact. It cannot be questioned that the statement which the witnesses Robinson, Bacon, Fleming and Zeigler testified was made by the witness Drake, was inadmissible as criminative evidence against the defendant. It was not introduced or admitted as criminative evidence, but for the sole purpose of impeaching the credibility of the witness Drake, Jr.; and the jury was plainly and emphatically instructed in the charge of the court as to the purpose for which said testimony was admitted, and that it could not be considered for any other purpose. * * * If, in laying the predicate to impeach the witness, Drake, Jr., had been asked, 'Did you not state in the presence of Hugo Robinson, Street Bacon, Bob Fleming and Todd Zeigler, on the evening or night of August 27, 1887, the day that Guinn was shot by your father, and at or near the store of Charles Rast, in Waco, that your father told you on that morning before the homicide that he was going to kill Guinn?' the question would have been proper; would have been

as to a fact relevant and material to the main issue—a fact with
respect to which the witness could be impeached by proving
that he did make such statement.    And so of any other fact of
like character.    As we have before stated, we regard the mat-
ter about which the witness Drake, Jr., was contradicted, as a
matter of opinion merely—a conclusion of the witness, and not
a fact.    Opinions of witnesses, as a general rule, are not ad-
missible in evidence.    Witnesses must be confined to a state-
ment of facts, within their knowledge, from which facts the
jury are to deduce their own conclusions."    On petition for re-
hearing the court says:    "It is stated by counsel for the mo-
tion that our opinion can only be sustained upon one or the
other of the following propositions:  '(1) That the fact in-
quired about in cross-examination is upon a collateral issue;  (2)
that the state's question and the witness' answer involved the
opinion of the witness.'  The first proposition is incorrectly
stated.    It should be stated thus:  'That the fact inquired
about is collateral to the issue.'    There is essential difference
between a fact collateral to the issue and a collateral issue.
Our position is that the fact inquired about—that is, the state-
ment by the witness Jimmie Drake that he knew the defendant
was going to kill the deceased—is collateral to the issue, not
that it is a fact bearing upon a collateral issue.    A  statement
inconsistent with a witness' testimony on the trial, to be made
the basis of impeachment, must be a statement material to the
issue, and it must be of a fact which the cross-examining party
would be entitled to prove as a part of his case.    Our position
is that it was not material to the issue in this case that Jimmie
Drake made the statement imputed to him.    That statement
could not be made evidence against the defendant.    It did not
involve facts in evidence, but merely the conclusion of the wit-
ness—a mere opinion or belief of the witness.    It was there-
fore a statement collateral to the issue, as we understand the
authorities upon this subject."

    It will thus be seen that, in the light of these decisions, the
evidence of Anderson as to what Hodgkins had told him was

clearly inadmissible.    The conclusions that Hodgkins had arrived at from his investigations were clearly immaterial to the issue in the case.    His opinion or conclusion could not have been given in evidence as criminative evidence by the prosecu tion, and the jury had no right to know what his conclusions were after his investigations.    Opinions of witnesses as to the guilt or innocence of the defendant are not admissible, and their admission ordinarily will constitute reversible error.    State v. Wilson, 4 S. D. 535, 57 N. W. 338.    The test laid down by the Pennsylvania court, and apparently adopted by all the courts, is:    "Would the cross-examining party be entitled to prove the fact inquired about as a part of his case tending to establish his plea?"    As we have seen, Hodgkins' conclusions from his investigation could not have been proven by him by the state. It is not claimed that the evidence could have been admitted. Then, if it could not, it was inadmissible, for the purpose of contradicting him.    Had Hodgkins stated that the defendant admitted to him he shot the deceased, or that he heard a shot, and soon after saw the defendant leaving the place with pistol or gun, these and like statements would have been criminating facts, that could have been proven in the case by the prosecution by the witness Hodgkins, and hence would have been the subject of impeachment in a proper case and under proper circumstances.

It is further contended that, if the admission of this evidence was error, it should be disregarded by the court, for the reason that the evidence, independently of the evidence of Anderson, was amply sufficient to justify the verdict of the jury. But we cannot take this view of the error.    It is impossible for this court to say how much weight the jury may have given to the opinion of Hodgkins, if they believed he made the statement testified to by Anderson.    The deliberate statement of Hodgkins, a brother of Mrs. Giles, who came a distance of 120 miles to investigate the murder of his brother-in-law, and who seems to have made a careful investigation of all the facts con

nected with the murder of Giles, within a few days after the homicide, that he was convinced that the defendant had killed Giles, would naturally be given great weight by the jury, and may have had an important and even a controlling influence with the jury in finding their verdict of guilty. For the error in admitting this evidence, the judgment is reversed, and a new trial is ordered.