STATE, Respondent, v. CLARK, Appellant.

(194 N. W. 655.)

(File No. 5100. Opinion filed July 2, 1923.)

1. **Homicide—Dying Declarations—Evidence—Criminal Law—Only Such Matters May Be Shown by Dying Declaration as Deceased Could Have Testified to.**

    Only such matters can be shown by a dying declaration as the deceased could have testified to if alive and present at the trial.

2. **Homicide—Res Gestae—Evidence—Criminal Law—What Occurs Before or After Act Resulting in Death Not Part of "Res Gestae."**

    What occurs before or after transaction resulting in death does not constitute a part of the res gestae, although the interval of the separation may be brief.

3. **Homicide—Dying Declaration—Evidence—Dying Declarations Admissible Only in Homicide Cases Where Circumstances of Death Subject Thereto.**

Dying declarations are admissible only in cases of homicide, where the death of the deceased is the subject of the charge and the circumstances of the death are the subject of the dying declaration.

4. **Homicide—Dying Declaration—Evidence—Admission of Extraneous Matter with Dying Declaration Held Inadmissible.**

In a prosecution for causing death by abortion, the admission of the written dying declaration of deceased, the greater portion of which related to her betrayal and desertion by an assumed lover, not the accused, shortly after she became pregnant, some six months prior to her death, held inadmissible.

5. **Homicide—Abortion—Evidence—Evidence Held Insufficient to Sustain Conviction for Causing Death by Abortion.**

In a prosecution for causing death by abortion, evidence held insufficient to sustain conviction.

6. **Criminal Law—Appeal and Error—Where Verdict of Guilty, Appellate Court Will Disregard Appellant's Testimony, and Accept, as True, All Material Testimony of State.**

Where there is a verdict of guilty in a criminal case, the appellate court must disregard the testimony of accused, and accept, as true, all material testimony on behalf of the state.

7. **Criminal Law — Presumptions — Evidence—Every Unlawful Act Presumed Criminally Intended Until the Contrary Is Shown.**

Every act in itself unlawful is presumed to have been criminally intended until the contrary is shown.

8. **Criminal Law—Evidence—Circumstances to Infer Guilt Must Be Inconsistent with Any Other Rational Conclusion.**

Circumstances, in order to warrant an inference of guilt, must not only be consistent with guilt, but must be inconsistent with any other rational conclusion.

9. **Witnesses—Evidence—Witness Cannot Be Impeached on Collateral Matter Brought Out on Cross-Examination.**

A witness cannot be impeached on a collateral matter brought out on cross-examination.

Appeal from Circuit Court, Butte County; HON. JAMES McNENNY, Judge.

Oscar H. Clark was convicted of causing death by abortion, and from judgment of conviction and from order denying new trial he appeals. Judgment and order reversed.

*Rice & Wishart,* of Deadwood, for Appellant.

*Byron S. Payne,* Attorney General, and *Benj. D. Mintener,* Assistant Attorney General, both of Pierre, for Respondent.

(1) to (5) To points one to five of the opinion, Appellant cited: Fannie v. State (Miss.), 58 So. 2; Titus v. State (Ala.), 23 So. 77.

Respondent cited: Simmons v. State, 129 Ala. 41; State v. Nash, 7 Ia. 347; State v. Gillick, 7 Ia. 287; Powers v. State, 74 Miss. 777; People v. Wood, 2 Edm. Sel. Cas. 71; Donnelly v. State, 26 N. J. L. 463; People v. Knapp, 26 Mich. 112; State v. Carrington, 15 Utah 480.

(9) To point nine, Appellant cited: State v. Davidson, 9 S. D. 564, 70 N. W. 879; State v. Chambers, 159 N. W. 113; State vs. Haynes (N. D.), 72 N. W. 923; 40 Cyc. 2769 and cases cited; Davis v. State (Miss.), 37 So. 1018; Williams v. State (Miss.), 19 So. 826; Myers v. State (Fla.), 31 So. 275; Commonwealth v. Mooney, 110 Mass. 99; Kennedy v. Commonwealth, 77 Ky. 340; Schell v. Plumb, 55 N. Y. 592; Orr v. State (Ala.), 18 So. 142; Askew v. People (Colo.), 48 Pac. 524; State v. Nave (Mo.), 222 S. W. 744; Denton v. Commonwealth (Ky.), 221 S. W. 202; Elrod v. Ashton (S. D.), 85 N. W. 599; People v. Brown, 80 N. W. 1115; People v. Collum (Cal.), 54 Pac. 589.

Respondent cited: 40 Cyc. 2778; State v. Emerson, 63 Tex. Cr. 628, 114 S. W. 834; State v. Matheson (Ia.), 103 N. W. 137; United States v. Holmes, 26 Fed. Cases 15382, page 116; State v. Baldwin, 36 Kan. 1, 12 Pac. 318.

POLLEY, J. Appellant was convicted upon an information charging that, by the use of certain instruments in and upon the body of one Alice Leuth, who was then pregnant with a quick child with intent then and there on the part of appellant to destroy the said child, appellant caused the death of the said Alice Leuth, and that the destruction of the said child was not necessary for the preservation of the life of the said Alice Leuth.

[1] At the time of the acts charged in the information appellant was engaged in the general practice of medicine and surgery in the town of Newell and surrounding country and in addition to said practice, conducted a hospital at that place. The evidence on the part of the state was to the effect that the said Alice Leuth went to the office of the appellant in the said hospital on the afternoon of the 6th day of December, 1919, and that the acts charged in the information took place at that time. On Sunday, the following day, the said Alice Leuth had a miscarriage, and on the morning of the Friday following she died from the effects of said miscarriage. To establish the guilty intent of the

appellant, the state relied very largely, if not wholly, upon a so-called dying declaration made by the deceased, two or three days before her death. The appellant objected most strenuously to the reception of this declaration in evidence, and it is error predicated upon its reception that the appellant mainly relies for a reversal of the judgment. This declaration was in writing, written by a friend at the dictation of the deceased, and is signed by deceased. It is quite lengthy, and only a small part of it relates, even remotely, to the cause of decedent's death. The greater portion of the declaration relates to her betrayal and desertion by an assumed lover shortly after she became pregnant some six months prior to her death. The events narrated in the declaration, and the circumstances surrounding them, were wholly immaterial to any issue in the case, and should have been excluded from the jury. The only part of said declaration that is at all pertinent to the issues in the case is the following:

"I went to Dr. Clark. * * * Dr. Clark said, 'I'll help you out, but don't tell your folks. Tell them you slipped.' He put me in a big leather chair. He used an instrument and stretched me, and then he took another one and opened my womb with it and I screamed, and he talked and tried to keep me still."

It would not have been competent to have shown the other matters contained in the declaration, if the decedent had been present at the trial. Only such matters can be shown by the dying declaration as the deceased could have testified to if she had been alive and present in court at the trial. Section 159, Greenl. Ev., Wigmore's Ed.; Montgomery v. State, 80 Ind. 338, 41 Am. Rep. 815; citing Jones v. State, 71 Ind. 66; Binns v. State, 57 Ind. 46, 26 Am. Rep. 48:

"Dying declarations are admitted from the necessity of the case, to identify the prisoner and the deceased, to establish the circumstances of the res gestae, and to show the transaction from which the death resulted." Wharton's Crim. Ev. § 278.

[2-4] What occurs before or after the act does not constitute a part of the res gestae, although the interval of the separation may be very brief. Jones v. State, supra; Wheeler v. State, 14 Ind. 573; Binns v. State, supra; Bland v. State, 2 Ind. 608; Field v. State, 57 Miss. 474, 34 Am. Rep. 476, and note. It is the well-settled rule that dying declarations are admissible only in

cases of homicide "where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declaration." Section 156a, Greenl. Ev., Wigmore's Ed. The extraneous matter contained in the dying declaration was of such a nature as to appeal strongly to the sympathies and inflame the passions of the jury. It could not be otherwise than prejudicial to appellant, and should have been excluded.

[5] There is little, if any, conflict in the statements made by appellant at the trial, and the dying declaration of the deceased, as to what took place in the appellant's office at the time the abortion is claimed to have been performed. Appellant testified that the deceased came into his office on the afternoon of December 6th; that she asked him if he ever operated for tumors; that he asked her where the tumor was; that she indicated low down in the pelvis; that he placed her in the examining chair and proceeded to make an examination; that he took a speculum and opened the vaginal passage; that he then cleaned away the mucous discharge until he could see the uterus; that he then for the first time discovered that she was pregnant, and that she was about to be confined; that he advised her to go right upstairs and go to bed, but that she refused; that he then told her that if she was going home to go at once, as she might be sick on the road; that when deceased left the office, she asked appellant if he would not help her out. He further testified that, when he delivered her of the child the next day, he found a catheter in her uterus, and that it was the catheter that had caused the miscarriage. He also testified that what the deceased meant, when she asked him to help her out, was that he would attend her through her confinement, and that that was what he meant when he said he would help her out. It is a significant fact that the deceased, at no time nor in any statement that she ever made, claimed that she had an understanding with appellant that he was to perform an abortion for her, or that anything was said about an abortion; nor did she at any time claim that she was not in the condition testified to by appellant when she went to his office. The appellant and a number of other experienced physicians testified that, if she was in the condition appellant claims she was when she went to his office, what he did was the proper treatment under the circumstances.

[6-8]   In view of the verdict, we are obliged to disregard the testimony of appellant, and accept, as true, all the material testimony on behalf of the state.   The question then is:  Does all the material evidence on behalf of the state necessarily lead to the inference of guilt?   It is not like the ordinary criminal case where the act itself implies a guilty intent.   Every act in itself unlawful is presumed to have been criminally intended until the contrary is shown.   But it is at this point that the proof fails. Had the deceased said in her dying declaration that she had asked the appellant to perform an abortion, or that she had an understanding with him, that he would produce a miscarriage, or even said that the act which brought about the miscarriage had not been performed before she went to appellant's office, there would have been ground for the inference of guilt.   It is morally certain that the deceased went to appellant's office for the purpose either of having an abortion performed or to get relief from the result of acts that had already been performed that brought about the miscarriage.   But it cannot be determined from the evidence whether she went there for the one purpose or the other.   What her purpose was, therefore, and what the purpose of the defendant was, is left to conjecture.   There is no direct proof on this question, and circumstances, in order to warrant an inference of guilt, must not only be consistent with guilt, but must be inconsistent with any other rational conclusion.

Three other assignments, 12, 15, and 16, merit special consideration.   Assignment No. 12 is based upon a question put to a witness on behalf of appellant on cross-examination.   This witness had testified that she saw the deceased just before she went to appellant's office on the afternoon of December 6th.   Witness testified that, on this occasion, the deceased was nervous and flushed, and, in answer to a question by witness, deceased admitted that she was in trouble; that she had used a catheter on herself, and that she was worried.   Witness then advised that she go and see appellant and directed her to his office.   On cross-examination, for the purpose of laying a foundation for impeachment, she was asked if she had not stated to one Barnett that the neighbors had gone to the Leuth home and taken the girl's written statement, and that the girl herself had said that appellant was responsible. This was objected to on the ground, among others, that it was an

attempt to impeach a witness on a collateral matter brought out on cross-examination. The witness said that she had not made such statement. Barnett was then placed on the stand and over appellant's objection was permitted to testify that the witness had so stated to him. The matter of impeaching a witness on a collateral matter, brought out on cross-examination, was gone into at length by this court in State v. Davidson, 9 S. D. 564, 70 N. W. 879, and, upon the authority of that case, this testimony should have been excluded. In the Davidson Case, this court, quoting from Hildeburn v. Curran, 65 Pa. 59, stated the rule as follows:

"The test of whether a fact inquired of on cross-examination is collateral is this: Would the cross-examining party be entitled to prove it as a part of the case, tending to establish his plea?"

Of course it would not be contended for a minute that the state could have asked this question on its main case. For a full discussion of this question, see Drake v. State, 29 Tex. App. 265, 15 S. W. 725. What is said relative to assignment No. 12 applies with equal force to assignments 15 and 16.

The judgment and order appealed from are reversed.

ANDERSON, P. J., concurs in the result.

Note—Reported in 194 N. W. 655. See, Headnote (1), American Key-Numbered Digest, Homicide, Key-No. 215(1), 30 C. J., Sec. 510; (2) Homicide, Key-No. 363, Criminal law, 16 C. J., Sec. 1114; (3) Homicide, Key-No. 214(2), 30 C. J., Sec. 502; (4) Homicide, Key-No. 214(3), 30 C. J., Sec. 510; (5) Homicide, Key-No. 234(1), 30 C. J., Sec. 557; (6) Criminal law, Key-No. 1159(2), 17 C. J., Sec. 3569; (7) Criminal law, Key-No. 24, 16 C. J., Sec. 48; (8) Criminal law, Key-No. 552(3), 16 C. J., Sec. 1568; (9) Witnesses, Key-No. 383, 40 Cyc. 2699.

On admissibility of dying declarations, in prosecution for homicide by commission of, or attempt to commit, abortion, see note in 63 L. R. A. 916.

As to how near the main transaction must declaration be made in order to constitute a part of the res gestae, see note in 19 L. R. A. 733.

On admissibility of dying declaration with respect to transaction prior to homicide, see note in 14 A. L. R. 757.