SWANSON, Appellant, v. McDONALD, Respondent.

(235 N. W. 118.)

(File No. 6934. Opinion filed February 27, 1931.)

*H. J. Bushfield,* of Miller, and *M. C. Cunningham* and *F. R. Winans,* both of Highmore, for Appellant.

*Theo. H. J. Studt,* of Highmore, and *Churchill & Benson,* of Huron, for Respondent.

MISER, C. Appellant Swanson sued respondent McDonald for a claimed balance on a note given by McDonald to Swanson. By way of affirmative defense, McDonald alleged that this and another note were secured by a real estate mortgage; that he (McDonald) owned notes executed by makers, named Snyders, who subsequently became heirs in an Iowa estate; that after the maturity of the McDonald mortgage, on Swanson's promise to bid in the McDonald land for the full amount due at foreclosure sale thereof, McDonald assigned to Swanson his claim against the Snyders; that Swanson accepted McDonald's transfer of that interest, asserted it against the Snyders, and received the proceeds. McDonald claims that, by this assignment of interest and the subsequent foreclosure of the mortgage, his notes should have been paid in full.

Evidence was introduced sufficient to support the defense alleged by respondent and the verdict obtained in his favor. The testimony of respondent was conflicting. In the brief of his counsel this is admitted. It is explained, however, that defendant, respondent, is excitable and that some of his statements made on cross-examination were made without a comprehension of the question asked. Appellant's own testimony was conflicting. The two Snyders owed the bank of which appellant was cashier over $10,000. They also owed respondent $4,070 and owed his brother a like amount. Appellant, with the assistance of an attorney, made all the collections. He credited the McDonald brothers with $627.25 after charging them with one-half of the attorney's fees. Swanson

first testified that he received between $600 and $700 for the bank, the same amount that was due the two McDonalds. He later testified that he collected about $3,000 on the Oliver Snyder claim and about $12,000 on the William Snyder claim. His counsel explains that this is either an error in the court stenographer's notes or a misstatement on the part of the witness. Whatever the inconsistencies in the testimony of both litigants and the reason thereof, the jury heard the testimony, saw the witnesses, and found a verdict for respondent. The trial court, with its superior facilities for arriving at the truth, denied the motion for a new trial. Unless error appears in the admission or exclusion of evidence, the judgment must be affirmed.

■ After testifying as to the time and place of, and persons present at, a conversation between plaintiff and defendant which she heard, a witness for respondent, on rebuttal, was asked the following question: "I will ask you in substance as follows: Mr. McDonald said: 'What did you sue me for?' and Mr. Swanson said: 'What else could I do?' And Mr. McDonald said: 'Didn't you agree to bid that property in for the full amount due if I turned the Snyder estate over to you?' And Mr. Swanson said: 'Yes, I did, but I didn't get anything out of it.' Is that the conversation you heard?" The objection that this question was leading having been overruled, the witness answered: "Yes, that is the conversation I heard." The quesiton was leading, but appellant Swanson had theretofore been asked without objection the same question on cross-examination and had denied having such a conversation. He had also theretofore testified on direct examination that he had not agreed to bid in the land for the full amount covered by the mortgage.

In Jones, Com. Ev. (1st Ed., Blue Book) § 845, Jones, Com. Ev. (2d Ed.) § 2405, quoting Stephen, Ev. art. 131, the rule is stated thus:

"Every witness under cross-examination in any proceeding, civil or criminal, may be asked whether he has made any former statement relative to the subject matter of the action and inconsistent with his present testimony, the circumstances of the supposed statement being referred to sufficiently to designate the particular occasion, and, if he does not distinctly admit that he has

made such a statement, proof may be given that he did in fact make it."

■ Appellant was asked on cross-examination as to a "former statement relative to the subject matter of the action." The fact inquired of was not collateral. State v. Davidson, 9 S. D. 564, 70 N. W. 879; State v. Clark, 46 S. D. 490, 194 N. W. 655. In the Davidson Case this court followed and quoted with approval Drake v. State, 29 Tex. App. 265, 15 S. W. 725.

Was it erroneous to impeach the testimony of appellant given on cross-examination, by asking the question of an impeaching witness on rebuttal in the form hereinbefore stated? According to Jones, Com. Ev. (1st Ed.) § 846, Jones, Co. Ev. (2d Ed.) § 2404, "it is the practice, which generally prevails, to ask the impeaching witness the direct question in leading form, whether the other witness used the language attributed to him." Although there are cases which hold "that the impeaching witness should first be left to exhaust his memory on the subject without the aid of leading questions, in order that the jury may see how far he answers from memory and how far from the question," the rule just above stated has long prevailed. People v. Lee Ah Yute, 60 Cal. 95; 1 Greenl. on Ev. § 435; Hinton v. Cream City R. Co., 65 Wis. 323, 27 N. W. 147; 40 Cyc. 2751; McLaughlin v. Los Angeles Ry. Corp., 180 Cal. 527, 539, 182 P. 44, 49. We see no reason in the case at bar for departing from what appears to be the prevailing rule.

We have examined the other errors assigned and find no prejudicial error in them. The judgment and order denying motion for new trial must therefore be, and they are, affirmed.

POLLEY, P. J., and CAMPBELL, BURCH, ROBERTS, and WARREN, JJ., concur.